## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT SCHOLTENS, Individually and as Representative of the Estate of RUTH SCHOLTENS, Deceased, | |
| Plaintiff, | **CIVIL ACTION** |
| v. | **NO. 4:18-cv-12187-TSH** |
| GYRUS ACMI, INC., OLYMPUS CORPORATION OF THE AMERICAS, and OLYMPUS AMERICA, INC., | |
| Defendants. | |

### <u>REPORT AND RECOMMENDATION</u>

**May 10, 2019**

Hennessy, M.J.

Before the Court is a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) by Gyrus Acmi, Inc. ("GAI"), Olympus Corporation of the Americas ("OCA"), and Olympus America, Inc. ("OAI," and together with GAI and OCA, "Defendants"). Dkt no. 20. Plaintiff has opposed the motion and Defendants have submitted a reply. See dkt. nos. 25, 28. This Report and Recommendation issues pursuant to a referral from District Judge Timothy Hillman. Dkt. no. 33. For the reasons that follow, the undersigned recommends that Defendants' motion to transfer the instant action to the United States District Court for the Western District of Michigan be granted. The presumption in favor of Plaintiff's choice of forum is weak in this case; it is outweighed by the convenience of the witnesses, the convenience of the parties, access to proof, and the interests of justice, which all favor litigating and trying this action in the Western District of Michigan.

I.      PROCEDURAL BACKGROUND

Plaintiff originally filed suit against Defendants in the Philadelphia Court of Common

Pleas on June 14, 2017.  Dkt. no. 1 ¶ 11; dkt. no. 20-1, at p. 7.  In September 2018, the Court of

Common Pleas entered a Stipulated Order dismissing the action on the ground of forum non

conveniens.  Dkt. no. 1 ¶ 12.  Thereafter Plaintiff commenced the instant action by filing a

complaint with this Court on October 22, 2018.  See generally id.  Pursuant to General Order 09-

3 and the Clerk of Court's Notice of Case Assignment, this matter was assigned to me on

October 23, 2018 as a referral under 28 U.S.C. § 636(b) for all pretrial non-dispositive matters

and Report and Recommendations.  Dkt. no. 4.  On November 5, 2018, Defendants waived

formal service of process.  Dkt. no. 6.  Each answered the complaint on December 28, 2018.

Dkt. nos. 8, 9, 10.

On January 2, 2019, Defendants filed a motion to transfer this action to the Western

District of Michigan.  Dkt. no. 20.  Plaintiff opposed the motion on January 16, 2019.  Dkt. no.

25.  A reply was filed on January 24, 2019.  Dkt. no. 28.

II.     FACTUAL BACKGROUND

On June 2, 2012, Ruth Scholtens, a Michigan resident, underwent a laparoscopic surgical

procedure at Butterworth Hospital in Grand Rapids, Michigan.  Dkt. no. 1 ¶ 14.  The procedure,

performed by Elizabeth Leary, M.D., involved the use of a Gyrus PKS PlasmaSORD morcellator

("Gyrus Morcellator").  Id. ¶¶ 6, 14.  Dr. Leary used the Gyrus Morcellator to cut into small

fragments Ruth Scholtens's uterus for extraction.  Dkt. no. 20-1, at p. 5 n.1.

Some time after the procedure, Ruth Scholtens was diagnosed with leiomyosarcoma, a

soft tissue sarcoma.  Dkt. no. 1 ¶ 15.  Plaintiff contends that the above procedure caused

cancerous cells to spread throughout Ruth Scholtens's abdomen and pelvis, thereby hastening

her cancer and death.  Id. ¶¶ 15, 16.  Dr. Leary allegedly was not aware of any malignant cells in Plaintiff's uterus prior to or during the procedure.  See id. ¶¶ 18, 19.

The Gyrus Morcellator, including the one used by Dr. Leary during Ruth Scholtens's procedure, was designed and manufactured in Cardiff, Wales, by Gyrus Medical Ltd. ("GML"), a British corporation.  Dkt. no. 20-1, at p. 7; see also dkt. no. 20-5, at p. 2.  GML is not owned by an American entity and does not own any American subsidiary.  Dkt. no. 20-1, at p. 5; see also dkt. no. 20-3 ¶ 3.  Plaintiff alleges that GML and GAI collaborated on the development of the Gyrus Morcellator, marketed and developed sales strategy and training for the product, and oversaw the product's regulatory approval.  Dkt. no. 1 ¶ 6.  For example, Plaintiff alleges that in 2008, GAI submitted a 510(k) application to the U.S. Food & Drug Administration for the Gyrus Morcellator, which listed GML as the manufacturer.  Id. ¶ 7.  Plaintiff further alleges that OAI and OCA helped market the Gyrus Morcellator, develop training protocol, and strategize sales. Id. ¶¶ 98, 99, 100, 101, 102, 107, 123.  For example, Plaintiff alleges that OAI and OCA provided physicians and other healthcare providers with information about, and training materials for, the Gyrus Morcellator.  Id. ¶ 123.

Plaintiff contends that Defendants knew of, or reasonably should have known about, the risks and dangers of performing laparoscopic hysterectomies or myomectomies for presumed fibroids, and the risks that women who undergo such procedures have undetected sarcoma.  Id. ¶¶ 18, 19, 20, 21.  He argues that Defendants knew or reasonably should have known that the use of the Gyrus Morcellator during a laparoscopic surgical procedure poses certain risks and dangers, and that Defendants overmarketed the Gyrus Morcellator for hysterectomy procedures. See generally id.  To that end, Plaintiff pleads eight causes of action:  (1) strict liability failure to warn and instruct; (2) strict liability as to design defect; (3) negligent misrepresentation and fraud

(against GAI and OAI); (4) negligent undertaking and training (against GAI and OAI); (5) negligent failure to warn; (6) survivorship of spouse; (7) loss of consortium; and (8) wrongful death.

## II.   LEGAL STANDARD

Section 1404(a) of Title 28 of the U.S. Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  The statute intends "to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  OsComp Sys., Inc. v. Bakken Express, LLC, 930 F. Supp. 2d 261, 273 (D. Mass. 2013) (quoting Astro-Med., Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009)).  Its purpose—"to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense,'" fits squarely within the Court's discretion to gauge convenience and fairness.  Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960)).  To assess the merits of a transfer application, the Court may consider a number of factors, balancing "the private interests of the parties as well as public interests such as efficiency and fairness."  Ovist v. Unum Life Ins. Co. of Am., 17-cv-40113-TSH, 2018 WL 3853739, at *2 (D. Mass. May 2, 2018) (quoting Wilderness Soc'y v. Babbitt, 104 F. Supp. 2d 10, 12 (D.D.C. 2000)), adopted by Ovist, 17-cv-40113-TSH (D. Mass. June 27, 2018) (Dkt. no. 24).  These factors include: (i) the plaintiff's choice of forum; (ii) the convenience of the witnesses and location of documents; (iii) the law to be applied; (iv) the connection between the forum and the issues of the case; (v) the governmental and/or public interests at stake; and (vi)

the relative convenience to the parties.  World Energy Alts., LLC v. Settlemyre Indus., Inc., 671
F. Supp. 2d 215, 218 (D. Mass. 2009).

"Although the decision to transfer a case under § 1404 lies solely in the discretion of the
trial court, there is a strong presumption in favor of the plaintiff's choice of forum and the burden
of proof rests with the party seeking transfer."  Id. at 217 (citing Holmes Grp., Inc. v. Hamilton
Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 16 (D. Mass. 2002)); see also Coady v. Ashcraft &
Gerel, 223 F.3d 1, 11 (1st Cir. 2000) (acknowledging the "strong presumption in favor of the
plaintiff's choice of forum" (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947))).  This
burden is a heavy one; the party moving for transfer must show by a preponderance of the
evidence that the action will more conveniently proceed if the Court grants the transfer.  See
Vartanian v. Monsanto Co., 880 F. Supp. 63, 73 (D. Mass. 1995); see also Plum Tree, Inc. v.
Stockment, 488 F.2d 754, 756–57 (3d Cir. 1973) (detailing the defendants' failure to provide a
proper showing to justify need for a § 1404(a) transfer); MRP Props., LLC v. United States,  No.
17-cv-11174, 2017 WL 5732912, at *5 (E.D. Mich. Nov. 28, 2017) (noting the burden of proof
requires a showing by a "preponderance of the evidence" (quoting United States v. Gonzalez &
Gonzalez Bonds & Ins. Agency, Inc., 677 F. Supp. 2d 987, 991 (W.D. Tenn. 2010))).

A transfer under § 1404(a) which merely shifts inconvenience from one party to another,
especially in light of the presumption favoring a plaintiff's forum choice, will not issue.
Kleinerman v. Luxtron Corp., 107 F. Supp. 2d 122, 125 (D. Mass. 2000).  The presumption
favoring plaintiff's choice of forum is particularly strong where a plaintiff lays venue in his
home state.  OsComp, 930 F. Supp. 2d at 274 ("When a plaintiff chooses his home forum, the
choice more likely represents considerations of convenience rather than vexation or harassment
to the defendant, thus elevating the hurdle the defendant is required to clear to warrant transfer."

(quoting Kleinerman, 107 F. Supp. 2d at 125)).  However, "when the plaintiff's choice of forum

has little or no connection to the operative facts of the case, such as the plaintiff being a

nonresident of the chosen forum, the court may afford less weight to [the plaintiff's] choice."

Rosenthal v. Unum Grp., 17-cv-40064-TSH, 2018 WL 1250483, at *1 (D. Mass. Mar. 12, 2018)

(citing United States ex rel. Ondis v. City of Woonsocket, 480 F. Supp. 2d 434, 436 (D. Mass.

2017)).

III.    ANALYSIS

As an initial matter, it is undisputed that both the District of Massachusetts and the

Western District of Michigan are proper venues for the instant litigation.  See dkt. no. 20-1, at p.

9; dkt. no. 25, at p. 3 n.2.  In other words, this action "might have been brought" in either

District.  28 U.S.C. § 1404(a).  Accordingly, the question before this Court is whether

Defendants have shouldered their burden of showing that considerations of convenience and

judicial efficiency strongly favor transferring this case to the Western District of Michigan.

A.  Private Interest Factors

1.  Plaintiff's Choice of Forum

Plaintiff argues that his choice to litigate in the District of Massachusetts should receive

substantial weight.  As the foregoing authorities show, Plaintiff is correct unless his choice of

forum has little or no connection to the operative facts, such as Plaintiff being a non-resident of

the chosen forum.  Here, as Defendants note, Plaintiff is domiciled and resides in Michigan, the

prospective transferee forum.

Moreover, the operative facts bear a strong connection to Michigan, and not to

Massachusetts.  Ruth Scholtens's hysterectomy was performed in Michigan, at Butterworth

Hospital.  She lived and received medical care in Michigan.  Plaintiff has lived in Michigan,

during and since the complained-of events.  The product was sold in Michigan, to a Michigan

hospital, and has been used only in Michigan.  Defendants aver that none of the product's design

or manufacture took place in Massachusetts, let alone the United States.  Dkt. no. 20-1, at p. 7;

dkt. no. 20-3 ¶ 3.  Moreover, while one Defendant, GAI, has its principle place of business in

Massachusetts, this detail does little to meaningfully link the present forum with the

circumstances giving rise to Plaintiff's causes of action.  That the Gyrus Morcellator was sold by

GAI,[1] and that decisions regarding the promotion, distribution and maintenance of the product

were made in Massachusetts are not sufficient to tilt the scales, given Plaintiff's complaint as a

whole.  In such circumstances, the ordinary presumption in favor of a plaintiff's choice of forum

does not carry significant heft.  See, e.g., Rosenthal, 2018 WL 1250483, at *4 ("Because of the

fact that the Plaintiff is a resident of the transferee state, and in consideration of the factors

discussed above, her choice of forum is afforded less weight in this instance."); Bowen v. Elanes

N.H. Holdings, LLC, 166 F. Supp. 3d 104, 108 (D. Mass. 2015) ("[T]he presumption is not

dispositive and 'may give way to other overriding considerations.'" (quoting Karmaloop, Inc. v.

ODW Logistics, Inc., 931 F. Supp. 2d 288, 290 (D. Mass. 2013))).

Plaintiff also argues that that his choice of forum is appropriate because "[i]n the context

of product liability cases, the 'locus of the plaintiff's injury is not a compelling factor in the

proof or defense of a products liability action.'"  Dkt. no. 25, at p. 4 (quoting Longtin v. Organon

U.S.A., Inc., No. 15-cv-30014-MGM, 2017 WL 9885438, at *3 (D. Mass. May 16, 2017) (citing

Butler v. Thompson/Ctr. Arms Co., No. 01-106-JD, 2001 WL 1570949, at *3 (D.N.H. Oct. 31,

2001) ("In an action for product liability, the scene of the accident is not necessarily the situs of

operative facts.")); Mohamed v. Mazda Motor Corp., 90 F. Supp. 2d 757, 776 (E.D. Tex. 2000)

---

[1] The sale allegedly took place in Michigan.  Dkt. no. 20-3 ¶ 4; see also dkt. no. 20-1, at p. 15.

("[T]he place of the alleged wrong—whether it be the accident . . . or the manufacture and design of the allegedly defective product . . . —neither supports nor weighs against transfer . . . in this product liability case.") (alteration and omissions in original))).  Yet in <u>Butler</u>, the plaintiff's chosen forum was the situs of design and manufacture of the allegedly defective product.  <u>Butler</u>, 2001 WL 1570949, at *3.  And in <u>Mohamed</u>, unlike here, the plaintiff's causes of action did not implicate questions or potential defenses respecting third-party liability, as that action's focus was the defective design and manufacture of a seatbelt manipulated solely by the victim. <u>Mohamed</u>, 90 F. Supp. 2d at 779–80.

Here, in addition to the design and manufacture of the Gyrus Morcellator, Plaintiff's causes of action concern the product's placement in the stream of Michigan commerce, its use in Michigan in connection with the care of Mrs. Scholtens and similarly situated women, and the risks associated with its use.  Whereas the locus of a plaintiff's injury might not be "a compelling factor in the proof or defense of a products liability action," here, the suit it not just about the product, but the facts and circumstances surrounding its use.  <u>See</u> <u>OsComp</u>, 930 F. Supp. 2d at 273 (quoting <u>Astro-Med., Inc.</u>, 591 F.3d at 12 (noting that the propriety of transfer depends on "individualized, case-by-case consideration[s] of convenience and fairness")).  Plaintiff's argument fails to persuade the Court that his choice of forum warrants deference.

    2.   Convenience of Witnesses

"Judges in this District agree that convenience of the witnesses is an extremely important, if not the most important, factor to be analyzed in determining whether to change a litigation's venue."  <u>March VII Inv. Ltd. P'ship v. Kramer</u>, No. 15-11917-MLW, 2016 WL 4941985, at *2 (D. Mass. Sept. 14, 2016) (quoting <u>Gemini Inv'rs Inc., Ameripark, Inc.</u>, 542 F. Supp. 2d 119, 126 (D. Mass. 2008)); <u>see also</u> <u>Rosenthal</u>, 2018 WL 1250483, at *2 ("The convenience and

location of witnesses is probably the most important factor for the court to consider in a motion to transfer." (citing Gemini, 542 F. Supp. 2d at 126)). "To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the quality of materiality of the[ir] testimony; and (3) show[] that any such witnesses were unwilling to come to trial . . . [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary." Kramer, 2016 WL 4941985, at *2 (alterations and omission in original) (quoting Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1169 (10th Cir. 2010)).

Defendants first argue that several material witnesses reside in Michigan and cannot be compelled to testify in Massachusetts. These prospective witnesses include Dr. Leary and other medical and hospital professionals who treated Ruth Scholtens in Michigan. Trial evidence will almost certainly require the testimony of these witnesses, as Plaintiff's claims relate directly to the injuries Ruth Scholtens sustained while under their care in Michigan. The parties do not dispute that Dr. Leary and other medical professionals cannot be compelled to testify at trial in Massachusetts. Rather, all prospective medical witnesses bar one—Gordon Downey, M.D., Ruth Scholtens's treating oncologist—would be subject to compulsory process in Michigan and thus available to testify in the transferee forum.[2]

The list of likely witnesses also includes Michigan residents who marketed, sold, and provided training on the Gyrus Morcellator in Michigan, including Defendants' employees and agents. Defendants aver that the Gyrus Morcellator was marketed and sold in Michigan to Butterworth Hospital by local representatives, and that other Michigan representatives trained health professionals, in Michigan, in the use and care of the product.

---

[2] Dr. Downey no longer resides in Michigan and has since relocated to Texas. Plaintiff acknowledges that other medical professionals remain in Michigan.

By comparison, the only witnesses who reside in Massachusetts are the GAI employees Plaintiff expects to call at trial.  Employees of a defendant party are non-factors in the convenience-to-witnesses analysis, since the employer has leverage by virtue of the employment relationship to require employees to appear at proceedings.  See Longtin, 2017 WL 9885438, at *5 ("Another category of third-party witnesses—Defendants' employees and both parties' experts—are significant to products liability litigation, but are not a consideration in the convenience calculus.  Because Defendants' witnesses 'will presumably appear in Massachusetts at [D]efendants' direction,' their location . . . is not a factor that favors transfer." (alteration in original) (quoting Boateng v.  Gen. Dynamics Corp., 460 F. Supp. 2d 270, 276 (D. Mass. 2006))).  This argument therefore is not persuasive.

In his opposition, Plaintiff relies on activity in Cutsinger v. Gyrus Acmi, Inc., 18-cv-00004 (E.D. Mo.) (filed Jan. 2, 2018) to support his choice of venue.  Cutsinger involves the same Defendants, the same product, same counsel, and nearly-identical causes of action. Plaintiff submits that the current forum is convenient because two GAI representatives have already been deposed in Massachusetts in Cutsinger.  That slice of the litigation ignores other aspects of the proceedings in Cutsinger.  For instance, in Cutsinger at least eight medical professionals have been deposed in Missouri—the situs of that plaintiff's medical procedure (also involving a Gyrus morcellator) and Plaintiff's domicile.  See Cutsinger, 18-cv-00004 (E.D. Mo.), dkt. no. 28, at p. 2.  Additional fact depositions in Cutsinger, such as those of the plaintiff's family members, have also taken place in Missouri.  Id.  Cutsinger merely demonstrates the benefits of a case proceeding in the forum with strong connections to the operative facts.

Plaintiff also argues that recorded deposition testimony of the prospective Michigan healthcare professionals would provide a sufficient substitute for live evidence because they

likely cannot recall details of Ruth Scholtens's injury or treatment, and thus will not be able to provide sufficient trial testimony regarding the same.  This argument is, as it sounds, speculation. However, even recognizing that the memories of some witnesses may be unhelpful, "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." Gulf Oil, 330 U.S. at 511.  This is why "the ability to produce live testimony can weigh strongly in favor of a particular forum." Interface Partners Int'l Ltd. v. Hananel, 575 F.3d 97, 105 (1st Cir. 2009).  In fact, this District recently addressed this precise concern: "It is well settled that that trier of fact should not be forced to rely on deposition evidence when the deponent's live testimony can be procured [through transfer].  This is especially so when the 'qualitative value' of the witnesses' testimony is high." Kramer, 2016 WL 4941985, at *5 (quoting Brant Point Corp. v. Poetzsch, 671 F. Supp. 2, 4–5 (D. Mass. 1987)).  Indeed, Plaintiff recognizes this very point, arguing that convenience favors Massachusetts because he prefers to present live testimony of at least three GAI employee witnesses at trial, and that he can do so in this forum. Dkt. no. 25, at p. 8.  As noted above, as employees of GAI, there is every reason to believe these witnesses will be available for live trial testimony in any forum where venue is laid. See Longtin, 2017 WL 9885438, at *5 (quoting Boateng, 460 F. Supp. at 276)).

For the above reasons, convenience of witnesses favors Michigan.

3.   Access to Proof and Location of Documents

Defendant contends that Michigan provides both greater and easier access to evidence and sources of proof.  Plaintiff disagrees, rejoining that neither forum is preferable because of "advances in communication, transportation and the preservation of testimony, costs, and

encumbrances . . . once oppressive [but] now usually surmountable." Dkt. no. 25, at p. 8 (quoting <u>Bevil v. Smit Ams.</u>, 883 F. Supp. 168, 171 (S.D. Tex. 1995)).

Today, the location of documents "is not a predominate concern in deciding venue as advances in technology have made it easy for documents to be transferred to different locations." <u>Hawkins v. Gerber Prods. Co.</u>, 924 F. Supp. 2d 1208, 1216 (S.D. Cal. 2013) (quotation omitted). However, "[t]hat access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." <u>In re Volkswagen of Am., Inc.</u>, 545 F.3d 304, 316 (5th Cir. 2008).   I conclude that access to documentary evidence favors neither forum.  Discoverable documents arguably will be found in Massachusetts, as GAI is headquartered here; Pennsylvania, where OCA and OAI maintain principal places of business; Michigan, the situs of Plaintiff's injuries, medical treatment, and associated medical facilities; and Cardiff, where GML designed, manufactured, and shipped the Gyrus Morcellator.  Moreover, as Plaintiff contends, cloud-based discovery (such as that utilized by Defendants in the similar <u>Cutsinger</u> matter) facilitates easy production of documents in any forum.  For these reasons, no forum appears more convenient as to access to documents.

Access to other potential evidence, however, weighs in favor of Michigan.  Physical evidence, including the Gyrus Morcellator itself, is located in Michigan.  It was shipped from Wales, where it was manufactured, to Michigan.  Defendants' agents who provided training on deployment of the Gyrus Morcellator, and healthcare professionals who were trained in its use, are in Michigan.  Non-medical and medical witnesses who can testify about Ruth Scholtens's health before and after the procedure are, with the exception of her oncologist in Houston, in Michigan.  While Plaintiff argues (and Defendants deny) that the GAI helped design and market the Gyrus Morcellator from within Massachusetts, this fact alone does not overcome the greater

access to proof that Michigan provides.  See, e.g., In re TS Tech USA Corp., 551 F.3d 1315,

1321 (Fed. Cir. 2008) (concluding that the location of physical evidence is relevant in weighing

access to proof when assessing whether transfer is appropriate).

A final consideration under this factor: Defendants maintain that Michigan is a more

convenient forum because, in order to defend against Plaintiff's claims, they may seek to

implead certain third parties, such as medical providers, who potentially are liable for Ruth

Scholtens's and Plaintiff's injuries.  Plaintiff does not dispute this contention, but instead states

that Defendants' argument constitutes a red herring since they "have not identified which third-

party they would seek to implead and their basis for doing so."  Plaintiff's characterization of the

record omits consideration of the following averment of Defendants' counsel:

> In addition to witnesses, Olympus may determine during or after discovery that
> Butterfield Hospital or local Michigan healthcare professionals are at fault for
> some or all of the Scholtens's injuries.  If that occurs, Olympus will likely not be
> able to assert claims against Butterfield Hospital or these professionals in this
> Court because a Massachusetts court likely lacks personal jurisdiction over these
> Michigan residents.  Olympus would thus have to institute a separate action later
> in Michigan to seek contribution and/or indemnification if Butterfield Hospital or
> other Michigan healthcare professionals appears to be at fault.

Dkt. no. 20-2 ¶ 5.  In the Court's view, this sworn statement, even if it fails to identify third

parties by name, sufficiently identifies the category of third parties Defendants may seek to

implead and the potential legal basis for doing so.

Moreover, at this stage of the proceedings this evidence is potentially important.

Plaintiff's claims, even those sounding in product liability, require proof of causation and injury.

See, e.g., 14D Mass. Prac. Series § 16.186 (Dec. 2018 update) (discussing strict liability

generally).  Proof of causation seemingly would require testimonial or physical evidence from

Michigan, since that is where care for Ruth Scholtens occurred.  It is settled that where crucial

witnesses and evidence are beyond the reach of compulsory process, and where a defendant is

13

unable to implead a third-party defendant for want of personal jurisdiction, it may be "unfair to make [the defendant] proceed to trial in this forum." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 242 (1981) (quoting Reyno v. Piper Aircraft Co., 479 F. Supp. 727, 733 (M.D. Pa. 1979)).  Here, the prospect of impleadable, unnamed parties whose attendance cannot be compelled in Massachusetts supports transfer.

In sum, access to physical and testimonial evidence weighs in favor of transfer.

4.   Convenience of the Parties

Part of the showing a defendant must make to support transfer is "that the plaintiff would not be substantially inconvenienced by a transfer." 15 Wright, Miller & Cooper, Fed. Prac. & Proc.: Jurisdiction § 3849 (4th ed. 2019); id. at n.3 (collecting cases).  Considerations include travel, residence of the parties, and the financial impact a change of venue would have on the litigants.  See id.; see also Boateng, 460 F. Supp. 2d at 275 (discussing travel and costs of litigation as proper considerations); Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 71 (D. Mass. 2001) (stating "the balance of convenience focuses on the comparative financial abilities of the parties and the cost of litigation should be borne by the party in the best position to absorb and spread it" (citing Kleinerman, 107 F. Supp. 2d at 125)).

Here, transfer would not inconvenience Plaintiff.  Plaintiff is a resident of the proposed transferee forum.  His travel and the corresponding costs and inconvenience of travel—meals, lodging, local transportation—would be significantly reduced by transfer from Massachusetts to Michigan.  Despite this, Plaintiff submits that the travel burden on the parties favors the current forum:  if the case is transferred, certain GAI employee witnesses will need to travel from Massachusetts to Michigan, and if the case continues in Massachusetts, only Plaintiff will require travel to the forum state.  But as discussed above, Defendants identify several prospective

witnesses, including their own representatives in Michigan, that would require travel from Michigan to Massachusetts if the matter proceeds in the instant forum.  Moreover, Defendants are better positioned than Plaintiff to absorb and spread the costs of travel.  I conclude that the convenience of both parties favors transfer to Michigan.  Indeed, ongoing litigation in Massachusetts would be less convenient for all parties.[3]

   B.  Public Interest Factors

      1.  Applicable Law

The Court considers the substantive law applicable to the instant dispute.  Sitting in diversity, a federal court applies the choice-of-law principles of the state in which the court sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  Under Massachusetts choice-of-law principles, Michigan law will apply to Plaintiff's claims.  See Burleigh v. Alfa Laval, Inc., 313 F. Supp. 3d 343, 351–52 (D. Mass. 2018) (noting that Massachusetts choice-of-law questions involving personal injury and products liability look to the laws of the state where the injury occurred as determinative of the rights and liabilities of the parties unless some other state has a more significant relationship to the occurrences and the parties).  Plaintiff does not contest this position.[4]

_____

[3] Furthermore, to the extent the parties attempt to seek live trial evidence from witnesses from Cardiff,  neither Massachusetts nor Michigan is more convenient as regards travel from Wales.

[4] Transfer will not change the governing Massachusetts choice-of-law principles, and thus will not prejudice Plaintiff.  Where a court transfers venue pursuant to §1404(a), the state law applicable in the transferor court— including relevant choice-of-law principles—continues to apply to the litigation as it proceeds in the transferee court.  Van Dusen, 376 U.S. at 639.  The Supreme Court "deemed that exception necessary to prevent 'defendants, properly subjected to suit in the transferor State,' from 'invok[ing] § 1404(a) to gain the benefits of the laws of another jurisdiction[.]'"  Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 65 (2013) (first alteration in original) (quoting Van Dusen, 376 U.S. at 638).  Hence, Massachusetts choice-of-law principles will apply throughout this litigation.

Given that Michigan law will govern Plaintiff's claims, transfer would put the case into the court better positioned to apply Michigan law.  "A court's familiarity with the applicable law has . . . been recognized in this circuit as an appropriate factor in deciding a motion to transfer." Galley v. Kreutzig, 15-cv-00047-JDL, 2015 WL 2349373, at *7 (D. Me. May 15, 2015) (citing Settlemyre Indus, 671 F. Supp. 2d at 218–19).  A federal judge presumably is more familiar with the law of the state in which he sits than is a federal judge sitting in another forum.  See Allstate Ins. Co. v. Hague, 449 U.S. 302, 326 (1981) ("For judges are presumably familiar with their own state law and may find it difficult and time consuming to discover and apply correctly the law of another State."); Karmaloop, 931 F. Supp. 2d at 291 ("Ohio courts are better equipped to apply Ohio law because they are more 'at home with the law that must govern the action.'" (citing Piper, 454 U.S. at 241 n.6)).  Applying this presumption here, a Michigan court will be better positioned than would a Massachusetts court to apply Michigan law.

　　2.  State Interests

Michigan has a local interest in this litigation that is superior to any Massachusetts' interest.  The Gyrus Morcellator was shipped to Michigan, used there at a public hospital, by a doctor and medical team presumably licensed by the state of Michigan on a woman who both before and at the time of surgery was a citizen of Michigan.  Given these circumstances, Michigan has a compelling interest in this litigation, as it touches on medical care provided to one of its citizens at one of its hospitals.  That interest is not diminished if, as Plaintiff contends, a Massachusetts company contributed to the design and marketing of the product.  Indeed, if true, Michigan has an interest in resolving any liability of the Massachusetts company for a product used in Michigan.

Michigan and Massachusetts each have an interest also in ensuring that the resources of their court systems are used efficiently.  Where the chosen forum has little connection to the operative facts of a litigation, or its parties, our courts should consider the unfairness which might result by imposing burdens on the forum's citizen jurors in adjudicating the dispute. Piper, 454 U.S. at 241 n.6.  Here, the burdens imposed on the Michigan jury pool are easily justified by the substantial links of the litigation to Michigan.  To be sure, as Plaintiff points out, Massachusetts is not without some interest given GAI is located here and had some role, even if disputed, in the product's creation and distribution.  However, in the view of the undersigned, it is not as compelling as Michigan's interest.

Because I find Michigan has the superior interest, the relative dockets of the courts in each district is also a factor.[5]  Hananel, 575 F.3d at 101.  Defendants have submitted relevant statistical data from the U.S. Courts.  See dkt. no. 20-1, at p. 17.  The data reflect that the District of Massachusetts docket is larger and has a greater backlog than does the Western District of Michigan.  Id.  Even if, as Plaintiff argues, this matter will not involve extensive judicial oversight and "is not starting at square one" because of discovery provided in Cutsinger, there is little merit in adding the case to the district with the busier docket where another district, with a less congested docket, has a greater interest in the litigation.

Accordingly, I find that Michigan has the superior interest in providing a forum for the resolution of this action.

---

[5] The relative dockets of the transferor and transferee courts might factor more significantly into the analysis where the forum having a greater interest is a closer question.  This is no such occasion.

## Conclusion

Defendants have met their burden to demonstrate that this litigation will more conveniently and fairly proceed in the Western District of Michigan.  Accordingly, the undersigned recommends that Defendants' pending motion to transfer venue (dkt. no. 20) pursuant to 28 U.S.C. § 1404(a) be GRANTED.[6]

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[6] The parties are notified that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of service of this Report and Recommendation.  The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72(b)(2).  The United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See, e.g., United States v. Diaz-Rosado, 857 F.3d 89, 94 (1st Cir. 2017); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).